United States District Court
Southern District of Texas
**ENTERED**
October 06, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEONARDO GUTIERREZ, | § | |
| TDCJ #02282972, | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-24-01902 |
| | § | |
| ERIC GUERRERO,[1] | § | |
| | § | |
| Respondent. | § | |
| | § | |

**MEMORANDUM AND ORDER**

Petitioner Leonardo Gutierrez (TDCJ #02282972), represented by counsel, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction and sentence. Doc. Nos. 1 & 2. Respondent filed an Answer (Doc. No. 8), and Gutierrez filed a Reply (Doc. No. 10). After carefully considering the petition, answer, reply, court records, and applicable law, the Court DISMISSES the petition with prejudice and DENIES a certificate of appealability.

## I. BACKGROUND

On September 12, 2019, a jury convicted Gutierrez of continuous sexual abuse of a child in Harris County cause number 1564986 and sentenced him to 33 years'

[1] Bobby Lumpkin was the previous named respondent in this action. Eric Guerrero has succeeded Lumpkin as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Guerrero is automatically substituted as the Respondent.

imprisonment. Doc. No. 9-8 (Clerk's Record Vol. 1 "CR I") at 238 (Judgment of Conviction by Jury).[2] A state intermediate appellate court affirmed his conviction on direct appeal. *Gutierrez v. State*, No. 01-19 00718-CR, 2021 WL 2931358 (Tex. App.—Houston [1st Dist.], July 13, 2021, pet. ref'd). The Texas Court of Criminal Appeals refused his petition for discretionary review. *Gutierrez v. State*, PD-0545-21 (Tex. Crim. App. Oct. 27, 2021). The United States Supreme Court denied certiorari. Doc. No. 2 (Petition) at 3.

The state court summarized the background facts on direct appeal:[3]

> At trial, Fay testified that she met Gutierrez when she was 10 or 11 years old because he was dating her Mother. He moved in with Mother and her children and then began touching Fay inappropriately. Fay testified that the first incident occurred when she was around 11 years old, while they all still lived in their first apartment. She stated that she fell asleep while watching a movie with her family and woke up when Gutierrez put his hand inside her pants and touched her "in the private." She testified that Gutierrez used his hand to touch her "private area" "a few times" following that initial incident. She also stated that Gutierrez would kiss her "weird," using his tongue, stating, "I would close my teeth, and he would tell me to open them." The final incident occurred after they had all moved to a new apartment, when Fay estimated that she was 11 or 12 years old. She testified that Gutierrez had sexual intercourse with her and then put his mouth on her "private." Fay stated that it was approximately one year between the first time he touched her and the time he had sexual intercourse with her. Fay eventually confided in her sister, who got help from an aunt, who called the police.
>
> Lea and Kate testified regarding Gutierrez's conduct toward them. Lea, Fay's sister, testified that Gutierrez touched her genitals and breasts with his hands and that he did this "a lot." One of these instances of touching occurred when she was around eight years old and was asleep in the bed with him and

[2] Citations to "Doc. No. ----" follow the pagination stamped at the top of the page in the CM/ECF system. Parallel citations to state records, when provided, track the BATES stamp pagination of that record.

[3] The Texas state court used pseudonyms "to protect the identity of the minors involved with this case." *Gutierrez*, 2021 WL 2931358, at *1 n.1. In this opinion, the Court refers to the complainant as "F.R."

Mother. She also recounted an occasion during which Gutierrez sat her on his lap so that she could feel his genitals through their clothes, and he had, on one occasion touched her with his genitals. Kate, Fay's cousin, testified that Gutierrez sent her inappropriate text messages starting when she was nine years old, but her mother saw the messages and made Gutierrez stop sending them. Gutierrez also kissed Kate inappropriately, and on one occasion touched her vagina with his hand.

The State also presented Mother's testimony. She testified that Gutierrez first began living with her and her four children in March or April 2016, and they moved to their second apartment in January 2017. Mother testified that Gutierrez was often home with her kids while she worked. She testified that she first learned of the sexual abuse when police came to her apartment, and the children were removed to stay with other family members. After that night, Mother left Gutierrez so that she could take care of her kids. A few days after she left Gutierrez, Fay confided in her about the abuse.

At that point in Mother's testimony, the State informed the trial court that it "would like to be able to go into what the complainant said" and believed that an "outcry hearing" was required. Outside the presence of the jury, the State questioned Mother to establish that she spoke to Fay about the abuse. Mother testified that she was over 18 years of age at the time she spoke with Fay about the abuse and that, to her knowledge, she was the first person who Fay told "in any detail" about what Gutierrez had done. Mother testified that her older daughter—the person that Fay first spoke to about the abuse—was younger than 18 years of age when she talked to Fay. Gutierrez's counsel asked Mother a couple of questions about the nature of her conversation with Fay. The trial court then ruled, "[O]bviously this is the outcry witness and we will certify her or state for the record that we consider this to be the outcry witness." Gutierrez did not object to this ruling. Mother then testified before the jury that Fay told her that Gutierrez had both molested and raped her.

The trial court charged the jury on the offense of continuous sexual assault of a child, tracking the language of Penal Code section 21.02. The charge also contained instructions on the lesser-included offenses of indecency with a child and aggravated sexual assault of a child. It specifically instructed the jury that, to find Gutierrez guilty of continuous sexual abuse of a child, the jurors "must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." Finally, the charge instructed the jury that, to consider extraneous-offense evidence, it was required "to find and believe beyond a reasonable doubt that the defendant committed" the offenses. The jury found Gutierrez guilty of

continuous sexual abuse of a child, and it assessed his punishment at 33 years' imprisonment.

*Gutierrez*, 2021 WL 2931358, at *2–3.

Gutierrez filed an application for habeas corpus in state court. Doc. No. 9-29 at 5, State Habeas Corpus Record ("SHCR") at 0001. On September 18, 2023, the trial court conducted an evidentiary hearing to consider the issue of whether trial counsel, Mr. Anthony Simmons ("Simmons"), rendered ineffective assistance of counsel. Doc. No. 9-23 at 9 ¶21, 2d Supp. State Habeas Corpus Record ("Supp. 2d SHCR") at 0007 ¶21 (Court's Findings of Fact and Conclusions of Law). Thereafter, the trial court issued Findings of Fact and Conclusions of Law and recommended that the application be denied. *Id.* at 7-18, Supp. 2d SHCR at 0005-00016.

The Texas Court of Appeals denied Gutierrez's application without written order "on the findings of the trial court and on the Court's independent review of the record." *Ex Parte Gutierrez*, WR-95,202-01 (Tex. Crim. App. Apr. 17, 2024); Doc. No. 9-24 at Action Taken Sheet. In this federal habeas petition, he asserts the following claims that trial counsel rendered ineffective assistance for the following:

1. Failing to object to the prosecutor's vouching for the State's case during voir dire.
2. Failing to: (a) file a motion in limine and object to the opinion testimony of an expert who referred to the child complainant as a "victim" of child sexual abuse, and (b) object to other witnesses' testimony indicating that they believed the complainant's version of events.

3. Failing to object to the testimony that Gutierrez assaulted the complainant's mother.

4. Calling Gutierrez's brother to testify, which opened the door for the prosecution to elicit testimony that the brother is an ex-convict.

5. Failing to object to the prosecution's closing argument that the statements of venirepersons during voir dire examination that their relatives had been sexually abused but never told anyone shows that sexual abuse is "widespread" and "secret."

*See* Doc. No. 2 at 5; Doc. No. 2-1 at 5.[4]

## II. LEGAL STANDARD

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter,* 562 U.S. 86, 103 (2011) (noting that "state courts are the principal forum for asserting constitutional challenges to state convictions"). The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), codified as amended at 28 U.S.C. § 2254(d), "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt"; it also codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotations omitted).

AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court,

---

[4] The Court addresses Gutierrez's claims in the order set forth in his memorandum; his petition lists the claims in a slightly different order.

subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Richter,* 562 U.S. at 98. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. AEDPA applies even when a state court does not state its reasons for its denial, issue findings, or specifically state that the adjudication was "on the merits." *Id.* at 98-99.

To the extent that the petitioner exhausted his claims, they were adjudicated on the merits by state courts. This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins,* 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d) (1)). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 562 U.S. at 102.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). Thus, AEDPA serves as a "guard against extreme malfunctions in

the state criminal justice systems," not as a vehicle for error correction. *Id.* (citation omitted); *see also Wilson v. Cain,* 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

"Review under § 2254(d)(1) focuses on what a state court knew and did." *Cullen v. Pinholster,* 563 U.S. 170, 182 (2011). Reasoning that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court," *Cullen* explicitly held that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. Thus, "evidence introduced in federal court has no bearing on § 2254(d)(1) review." *Id.*

## III. <u>DISCUSSION</u>

Gutierrez argues that his defense counsel rendered ineffective assistance at trial. The Constitution guarantees a fair trial for criminal defendants through the Due Process Clause, but the Sixth Amendment, which conveys the right to have the effective assistance of counsel, largely defines the basic elements of a fair trial. *See* U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 685 (1984); *see also McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (observing that "the right to counsel is the right to the effective assistance of counsel"). Claims for ineffective assistance of counsel are analyzed under the following two prong standard:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was

> not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. Thus, to prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice because of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).

The first prong of the governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88), *cert. denied*, 547 U.S. 1041 (2006). In the Fifth Circuit, "federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017).

To prove prejudice, the second prong under *Strickland*, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "A petitioner who seeks to overturn his conviction on grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence." *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995) (citing *Hayes v. Maggio*, 699 F.2d 198, 201 (5th Cir. 1983)).

### A. <u>Failure to Object to "Vouching" for the State's Case</u>

Gutierrez faults trial counsel for failing to object to the prosecutor's alleged "vouching" for the State's case during voir dire. "A prosecutor's vouching for the credibility of witnesses improperly suggests to the jury (1) that evidence not presented at trial but known to the prosecutor supports the charges against the defendant so that the conviction is not based only on evidence presented to the jury, and (2) that the prosecutor's opinion, which carries an imprimatur of the State, should be trusted over the jury's own view of the evidence." *Woodfox v. Cain*, 609 F.3d 774, 805 (5th Cir. 2010) (reversing the federal district court's grant of habeas relief because the prosecutor's comments were subject to a limiting instruction and the state court's determination that the comments were not prejudicial was not an unreasonable application of Federal law) (citation omitted).

Gutierrez bases his claim on the following comments the prosecutor made during voir dire examination:

> Why might in a certain case, not this one, but why might the State not offer a statement given by the defendant? A recorded statement by him, why would I not show you it? Anybody? This one is kind of hard. Anybody. Okay. So it is my responsibility to believe the evidence that I receive is reliable, true and credible, okay? So if I don't believe one of those things, I may not bring it to you. Everyone understand that? In the same way I wouldn't put someone on the stand and lie to you. Everyone understand that? All right.

Doc. No. 9-2 at 103, RR Vol. II at 103 (Voir Dire).

When questioned why he did not object to this comment, Simmons stated that he did not regard this as "vouching," and the state court's findings reflect that the "vouching" referred to the prosecutor's hypothetical used to explain why the State might not offer Defendant's statement during trial. Doc. No. 9-23 at 14 ¶¶ 59-60. The Fifth Circuit explained that a prosecutor's questions and presentation of the law regarding the introduction (or omission) of a defendant's statement is permissible in voir dire examination:

> A prosecutor's statements regarding a defendant's failure to testify made *after* the introduction of evidence may violate the Fifth Amendment. *See United States v. Johnston*, 127 F.3d 380, 396 (5th Cir. 1997). During voir dire, however, before the introduction of any evidence, the prosecution may attempt to determine if a prospective juror will be prejudiced against the state by the absence of live testimony from the defendant. *See Campos v. State,* 589 S.W.2d 424, 426 (Tex. Crim. App. 1979) (stating that because the state's counsel had no way of knowing whether the defendant would testify, it was not necessarily error to comment on the defendant's potential failure to testify during voir dire); *see also Sanders v. State,* 963 S.W.2d 184, 190 (Tex. App.—Corpus Christi 1998, n.w.h.). This is a valid area of voir dire inquiry under Texas law as a prospective juror should be told what the law is before being excused for bias or prejudice against that law. *See Cuevas v. State,* 742 S.W.2d 331, 343 n. 12 (Tex. Crim. App. 1987). Under *Strickland,* therefore, the failure of Green's counsel to object was not deficient because the prosecution's line of questioning was proper. Green alleges no facts suggesting that he was prejudiced.

*Green v. Johnson*, 160 F.3d 1029, 1038 (5th Cir. 1998) (emphasis in original) (rejecting the petitioner's claim alleging that the prosecutor improperly commented on why there could be an absence of testimony from the defendant because the prosecutor was merely explaining the law during voir dire).

The state habeas court rejected Gutierrez's vouching claim, finding as follows:

> 58. During the trial court's voir dire, the Judge advised the veniremen: "Everything that I say is not evidence, and nothing that the attorneys will tell you during the course of the trial is evidence because they were not there. So remember that. Nothing I say, nothing the attorneys say is evidence." 2 R.R. at 14-15.
>
> 59. The trial record reflects the alleged "vouching" actually referred to a hypothetical scenario used to explain why the State may choose not to offer the Defendant's statement into evidence at trial. *Id.*; 2 R.R. at 103.
>
> 60. Simmons testified that, from his point of view, he did not believe the complained of statement[] by the State was objectionable "vouching." 1 W.R.[] at 41-42.
>
> 61. Simmons testified that he would not have objected to that statement at trial because he "would want to be able to go back and [say] something opposite." 1 W.R. at 42.
>
> 62. The applicant fails to show that the trial court would have erred in overruling an objection to the State's hypothetical had Simmons objected.

Doc. No. 9-23 at 14 ¶¶ 58-62 (footnotes omitted).

Here, the prosecutor's comment was not a specific endorsement of any person's credibility, or a comment on any identifiable piece of evidence, but rather stated a proposition of law: that the prosecutor has a duty not to present evidence she believes to be unreliable or a lie. *See* Doc. No. 9-2 at 103; Texas Disciplinary Rule of Professional Conduct Rule 3.03(3); *see also Napue v. State of Ill.*, 360 U.S. 264, 269 (1959). As noted

by the Fifth Circuit in *Green*, *supra*, one function of voir dire is to instruct the venire regarding the law and excuse jurors who indicate a bias or prejudice against that law. 160 F.3d at 1038. Further, as noted above, the state habeas court found that the trial judge instructed that any comments from the lawyers or the judge were not evidence.

In addition to being subject to the trial court's instructions that any comments from the lawyers are not evidence, the alleged "vouching" during voir dire was isolated and presented in the context of instructing the venire on the law during voir dire. *See, e.g.*, *Woodfox*, 609 F.3d at 805-06 (noting that the prosecutor's comments were subject to a limiting instruction and were "relatively isolated in the context of the trial as a whole"). Gutierrez does not show that the state court's finding that the challenged comment was referring to a hypothetical scenario and that Simmons did not believe this was vouching were unreasonable determinations of the facts based on the record.

The state habeas court further found that Gutierrez failed to show that the trial court would have erred in overruling an objection had Simmons objected to the prosecution's hypothetical, and, therefore, that Gutierrez did not show prejudice under *Strickland*. Gutierrez does not show that the state habeas court's adjudication of this claim is contrary to, or an unreasonable application of clearly established Federal law. *See* 28 U.S.C. § 2254(d). Therefore, this claim is denied.

### B. <u>Failure to file a Motion in Limine and Object to Opinion Testimony that the Complainant was a "Victim" of Sexual Abuse who is Telling the Truth and that Petitioner is Guilty</u>

Gutierrez next faults Simmons for failing to file a motion in limine and failing to object, if necessary, to limit any references to the complainant as a "victim" and opinion testimony that the complainant was telling the truth and that Gutierrez was guilty. Gutierrez faults Simmons for failing to object to the following:

- Officer Kincer testified that he spoke with Emily, the older sister of F.R., the "victim." Doc. No. 9-3 at 36, RR Vol. III at 36.
- Officer Menefee testified that when she interviewed Gutierrez, his story "seemed possible" but then she later "believed this happened" and decided to file charges. *Id.* at 69.
- Complainant's mother testified that F.R. is a problem child who lies sometimes, but not about "big things." *Id.* at 106.
- Erika Gomez, a forensic interviewer at the Children's Assessment Center ("CAC"), testified that she interviewed F.R., whose story "made sense." *Id.* at 168.

*See* Doc. No. 2-1 at 26-32.

Regarding these claims, the state habeas court found:

> 73. Simmons filed a *Motion in Limine* instructing "the District Attorney, and the District's representatives and witnesses to refrain from making any direct or indirect reference [] before the jury during guilt/innocence and the punishment phase, of all extraneous offenses, wrongs, acts and prior convictions enumerated in the State's *Notice of Intent to Use Extraneous Offenses and Prior Convictions*. 1 C.R. at 165-192.

> 74. Although Simmons recognized that he could have objected to the complaining witness being referred to as "victim", Simmons testified that he did not include it in his Motion in Limine because he did not want to "sit there and burn rubber." 1 W.R. at 44-46.
>
> 75. Simmons avers that he anticipated that the State would offer opinion testimony that the complaining witness was telling the truth, but he chose not to file a *Motion in Limine* addressing opinion testimony. *Id.* at 48.
>
> 76. Simmons testified that if he did not object to the opinion testimony, he only would have done so in order to "piggyback [off of] something that supports the defense." 1 W.R. at 49.
>
> 77. The applicant fails to show that a ruling on a *Motion in Limine* would have changed the outcome of the trial.
>
> 78. The trial court finds that the applicant has failed to meet his burden under the second prong of *Strickland*. *Strickland*, 466 U.S. 668 at 669.

Doc. No. 9-23 at 16 ¶¶ 73-78.

**1. Referring to Complainant as the "victim"**

Gutierrez complains that Officer Kincer referred to F.R. as the "victim." A careful review of his testimony shows that it was the prosecutor, not the witness, who used the term "victim," and Kincer was answering the prosecutor's questions regarding who he talked to, where the prosecutor asked whether that person was the "victim" in this case. *See* Doc. No. 9-3 at 36:14-20. Gutierrez was ultimately convicted of continuous sexual assault of a minor in violation of Texas Penal Code section 21.02, which provides in relevant part:

> (b) A person commits an offense if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more **victims**; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the **victim** is a child younger than 14 years of age, regardless of whether the actor knows the age of the **victim** at the time of the offense.

Tex. Penal Code § 21.02(b) (emphases added). As set forth above, the statute of conviction uses the term "victim." *Id.* Contrary to Gutierrez's contentions, courts have found that a passing reference to the complainant as the victim is harmless, especially where the statutory language refers to the complainant as a "victim." *See Bucknell v. Dir., TDCJ-CID*, No. 4:10CV184, 2013 WL 1313088, at *9 (E.D. Tex. Mar. 28, 2013) ("Use of the term "victim" in a court's charge does not assume the truth of controverted issue where that is the language the legislature uses"; and "[a] prosecutor's or State's witness' use of the word victim to refer to the children is not surprising and would not be viewed as anything other than a contention of the prosecution") (citing Texas cases); *Tollefson v. Stephens*, No. SA:14-CV-144-DAE, 2014 WL 7339119, at *6 (W.D. Tex. Dec. 23, 2014) (upholding the state court's finding of no ineffective assistance of counsel in a self-defense homicide case where "victim" was used numerous times to refer to the complainant and holding that under Texas state law, terms like "victim" "are commonly used at trial in a neutral manner to describe the events in question and, in context, carry no implication that the person using such terms has an opinion one way or the other about the guilt of the defendant" (quoting *Cueva v. State,* 339 S.W.3d 839, 864 (Tex. App.—Corpus Christi 2011, no pet.)); *Brown v. Dir., TDCJ-CID*, No. 6:07CV272, 2008 WL 1998691, at *6 (E.D.

Tex. May 2, 2008) (holding that the petitioner's claim regarding a passing reference to the complainant as the "victim" was meritless). Gutierrez does not meet his burden to show that the state court's rejection of this claim was an unreasonable application of, or contrary to, clearly established federal law.

### 2. Other Witness Testimony

Gutierrez further argues that Simmons was ineffective for failing to object to Officer Menefee's testimony that she "believed this happened"; Erika Gomez's testimony that the complainant's account "made sense"; and the mother's testimony that the complainant lies sometimes, but not about "big things." Gutierrez contends that this trial testimony offered opinions as to the truthfulness of the complainant, which is impermissible under Texas law. *See Yount v. State*, 872 S.W.2d 706, 712 (Tex. Crim. App. 1993) (en banc) ("[Texas Rule of Evidence] 702 does not permit an expert to give an opinion that the complainant or class of persons to which the complainant belongs is truthful.").

The state habeas court found that the failure to object to these comments was not prejudicial under the second prong of *Strickland*. Doc. No. 9-23 at 16 ¶ 78. The Fifth Circuit has explained that the federal habeas review of ineffective assistance claims for a state conviction must be "'doubly deferential.'" *Fears v. Lumpkin*, No. 20-40563, 2022 WL 3755783, at *5-6 (5th Cir. Aug. 30, 2022) (per curiam) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In *Fears*, another continuous-sexual-abuse-of-a-child case where the case hinged on the credibility of the complainant, the Fifth Circuit held that AEDPA deference required it to "defer to the CCA's no-prejudice decision" that

found that counsel's failure to object to witnesses' testimony that they believed the complainant where the case turned on the complainant's credibility did not cause actual prejudice under *Strickland*. *Id.* There, the court noted: "Double deference applies to both the deficiency and prejudice prongs." *Id.* at *5 & n.5 (citing *Richter*, 562 U.S. at 105; *Cullen*, 563 U.S. at 202; and *Anaya v. Lumpkin*, 976 F.3d 545, 554 (5th Cir. 2020)).

Moreover, the Fifth Circuit has found that comments similar to the challenged comments here are "arguably cumulative evidence of [the complainant's] credibility—and therefore harmless—where the jury had other opportunities to assess the complainant's credibility itself." *Flores v. Lumpkin*, 72 F.4th 678, 680 (5th Cir. 2023) (citing *Fears*, 2022 WL 3755783, at *6).[5] Like the complainants in *Flores* and *Fears*, F.R. testified about what happened to her, and the jury was able to assess her credibility directly. *See* Doc. No. 9-4, RR Vol. IV, at 30-76 (Testimony of F.R.). Gutierrez does not show that his counsel's failure to object to these witnesses' comments caused him actual prejudice and fails to show that the state court's adjudication of this claim was contrary to, or an unreasonable application of, *Strickland* or other federal law. Accordingly, this claim cannot form the basis for habeas corpus relief.

---

[5] The *Flores* Court also noted that "[u]nder Texas law, a sexual assault conviction 'is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred.'" 72 F.4th at 680 (quoting Tex. Code Crim. Proc. Ann. art. 38.07(a)).

### C. Failure to Object to Testimony that Gutierrez Assaulted the Complainant's Mother

Gutierrez faults trial counsel for not objecting to testimony that he assaulted the claimant's mother. Regarding this claim, the state habeas court made the following findings:

> 65. The applicant claims Simmons failed to object to the complaining witness's mother's testimony that Applicant pushed her around in the girls' presence. Applicant's Writ at 7; 3 R.R. at 95-96.
>
> 66. The applicant claims Simmons failed to object to L.R.'s testimony that Applicant used to hit their mother a lot and hurt her. Applicant's Writ at 7; 4 R.R. at 21-22.
>
> 67. Simmons testified that he did not recall either the complaining witness's mother's testimony that Applicant pushed her around in the girls' presence, or "the girls" testimony that Applicant pushed their mother around in their presence. 1 W.R. at 28, 50-51.
>
> 68. Although Simmons did not recall L.R.'s testimony, assuming, arguendo, that he did, Simmons testified that if he thought the defense would benefit from that testimony coming in, he would not object. 1 W.R. at 50-51.
>
> 69. The applicant fails to prove Simmons did not have a strategic reason for not objecting to the extraneous assault of L.R.'s mother.
>
> 70. The applicant fails to demonstrate harm as a result of Simmons's alleged failure to object to L.R.'s testimony that Applicant used to hit their mother a lot and hurt her.
>
> 71. With regards to any failure to object, the trial court finds that the applicant has failed to meet his burden under the second prong of *Strickland*. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Doc. No. 9-23 at 15 ¶¶ 65-71.

As the record and Simmons's testimony reflect, Simmons's main defense strategy was to show that the complainant and other girls were lying about the sexual abuse. *See* Doc. No. 9-4 at 147-158, RR Vol. IV at 147-158 (Defense Closing Argument); Doc. No. 9-20 at 49-51, 52:11-15 (Evidentiary Hearing Testimony). In his closing argument, Simmons pointed to inconsistencies in their testimony and highlighted the complainant and other girls' desire to make Gutierrez go away "by any means necessary," arguing that the girls were lying about sexual abuse to get him out. Doc. No. 9-4, RR Vol. IV at 149. In the evidentiary hearing, he explained that he did not object to some of the testimony because he wanted to "piggyback" off of "something that supports the defense," and also stated, "if the kids lie and the kids lied about Mr. Gutierrez assaulting [the complainant's mother] and there's some information in there about their lying, I would let that come in to show furtherance of that could be a lie." Doc. No. 9-20 at 49, 52:11-15; *see also* Doc. No. 9-23 at 16 ¶ 76.

The mother's testimony that Gutierrez hit her could conceivably support Simmons's argument that the girls lied about the sexual abuse because they wanted him out of the house and did not like him because he was mistreating their mother. Gutierrez fails to show that Simmons's failure to object was not a strategic decision that supported his theory of the defense, which was that the girls were lying to get Gutierrez away from their mother and/or from them. He does not meet his burden to prove that the state court's adjudication of this claim was contrary to, or an unreasonable application of *Strickland*. Therefore, it is denied.

### D. Calling Gutierrez's Brother to Testify

Gutierrez contends that counsel was ineffective for calling his brother, Manuel, to testify, because the prosecution raised Manuel's criminal record on cross examination. Regarding this claim, the state habeas court found:

> 80. Simmons avers the purpose for calling Manuel Gutierrez was to introduce: testimony that he and the applicant rode to work together every day; the applicant's work records; and to refute the offense date. 1 W.R. at 53-57.
>
> 81. The applicant fails to show Simmons's strategic reasons for calling Manuel Gutierrez to the stand were objectively unreasonable.
>
> 82. The applicant fails to prove that the testimony of Manuel Gutierrez harmed the applicant.
>
> 83. The trial court finds that the applicant has failed to meet his burden under the second prong of *Strickland*. *Strickland*, 466 U.S. at 669.

Doc. No. 9-23 at 16-17 ¶¶ 80-83.

As explained above, defense counsel's strategic decisions are subject to double deference. *See Rhoades*, 852 F.3d at 434. The state court found that Gutierrez failed to show that Simmons's strategic decisions for calling Manuel were objectively unreasonable or caused him prejudice under the second prong of *Strickland*. Doc. No. 9-23 at 17 ¶¶ 82-83. Gutierrez fails to show that the state court's adjudication of this claim was contrary to, or an unreasonable application of clearly established federal law. Accordingly, this claim is denied.

**E. <u>Failure to Object to Prosecutor's Closing Argument Referencing Comments from Venirepersons that Sexual Abuse is "secret" and "widespread."</u>**

Gutierrez claims that Simmons was ineffective for failing to object when the prosecutor mentioned, in closing argument, that the comments from the venirepersons showed that sexual abuse is "secret" and "widespread." The state habeas court found that Simmons testified that the prosecutor's statements during closing are not evidence. Doc. No. 9-23 at 14 ¶ 64. In addition, the state habeas court found that the trial court instructed the veniremen: "'Everything that I say is not evidence, and nothing that the attorneys will tell [you] today during the course of the trial is evidence because they were not there. So remember that.'" *Id.* at 14 ¶ 58.

The proper scope of prosecutorial closing argument in Texas encompasses four areas: "(1) summations of the evidence; (2) reasonable inferences or deductions from the evidence; (3) responses to opposing counsel's arguments; and (4) pleas for law enforcement." *Norris v. Davis*, 826 F.3d 821, 832 n.10 (5th Cir. 2016) (citing *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996)). To constitute reversible error under Texas law, jury argument must be extreme or manifestly improper or must inject new and harmful facts into evidence. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

Similarly, in the context of federal habeas proceedings challenging a state conviction based on a prosecutor's allegedly improper closing argument, the Fifth Circuit has held:

> [I]mproper jury argument by the state does not present a claim of constitutional magnitude unless it is so prejudicial that the petitioner's state

> court trial was rendered fundamentally unfair within the meaning of the Fourteenth Amendment's Due Process Clause. *Kirkpatrick v. Blackburn,* 777 F.2d 272, 281 (5th Cir. 1983). To establish that a prosecutor's remarks are so inflammatory as to prejudice the substantial rights of a defendant, the petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred. *Id.* At best, the petitioner suggests that "it cannot be said with any degree of certainty" that the allegedly prejudicial remarks "had no effect on the outcome" of the case. That is true. The burden, however, was not on the state to make such a showing. The petitioner has failed to carry his burden of showing that the evidence against him was so insubstantial that but for these remarks no conviction would have occurred.

*Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986).

The state habeas court found that Gutierrez did not show that his counsel's failure to object caused him actual prejudice. Doc. No. 9-23 at 15 ¶ 71. In addition, the record reflects that the trial court instructed the jury not to consider any statements by counsel as evidence. *See United States v. Mota*, 598 F.2d 995, 1000 (5th Cir. 1979) (holding that defendant was not prejudiced where the trial court instructed the jury that the comments of counsel were not evidence and could not be considered as such). Having reviewed the jury argument in the context of the entire trial, the Court finds that Gutierrez has not met his burden to show actual prejudice, and, therefore, has failed to show that the state habeas court's conclusion is contrary to or an unreasonable application of Federal law. Therefore, under § 2254(d), no relief is available on this claim.

**F. <u>Cumulative Prejudice</u>**

Gutierrez asserts that the state court did not view counsel's errors cumulatively for prejudice and that the cumulative effect of counsel's errors resulted in actual prejudice. Federal habeas relief is only available for cumulative errors that are of a constitutional

dimension. *See Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007) (citing *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993)). As previously discussed, none of the petitioner's claims establish that he received ineffective assistance of counsel under *Strickland*. Because he has not identified errors of constitutional dimension, he has failed to show that the state habeas corpus court's rejection of his cumulative-error claim was objectively unreasonable. *See Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) ("Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised."). Accordingly, the petitioner is not entitled to federal habeas corpus relief on this issue.

In sum, Gutierrez fails to show that the state court's adjudication of his claims was contrary to, or an unreasonable application of *Strickland*. Therefore, his petition must be dismissed.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. *See* 28 U.S.C. § 2253. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard*, 542 U.S. at 282 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For reasons set forth above, the Court concludes that jurists of reason would not debate whether the Court's ruling in this case was correct. Therefore, a certificate of appealability will not issue.

## V. CONCLUSION AND ORDER

Based on the forgoing, the Court **ORDERS** as follows:

1. This habeas petition is **DISMISSED** with prejudice.
2. All other pending motions, if any, are **DENIED**.
3. A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this Order to the parties.

SIGNED on this 6th day of October 2026.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE